IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DANIEL DAVID,

        Petitioner,

v.

HARLEY G. LAPPIN,

        Respondent.

No.  CR 02-0062 SI
No. C 07-04081 SI

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Daniel David, an inmate at Taft Correctional Center, brings this petition to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, alleging four grounds for relief. In a January 9, 2008 order, the Court summarily dismissed one of petitioner's claims, *see Hendricks v. Vasquez*, 908 F.2d 490, 491 (9th Cir. 1990), and directed respondent to show cause why a writ should not be issued on grounds of the three remaining claims because, liberally construed, the remaining claims were not patently frivolous, *see* 28 U.S.C. § 2243 and Rule 5 of the Rules Governing Section 2254 Cases. Respondent filed an answer and petitioner filed a traverse. Having carefully considered the papers submitted, the Court DENIES the petition for habeas relief.

**BACKGROUND**

In April 1998, petitioner and Scott Nisbet launched a fraudulent scheme to defraud Pacific Bell, long-distance telephone carriers ("LD carriers") and toll-free subscribers by misrepresenting themselves as legitimate payphone service providers. *See* Reporter's Transcript of Proceedings, March 1-10, 2004 ("RT") at 618-19, 631-32, 660-61, 669-71, 681. Using fictitious names, petitioner and Nisbet leased 23 payphone lines ("lines") from Pacific Bell and petitioner installed the lines in a leased office space

1  in South San Francisco. *See id.* Petitioner and Nisbet did not disclose to Pacific Bell or the LD carriers
2  who provided service for the lines that they did not intend to, nor did they actually, attach payphones
3  or any other telephone to the lines. *See* RT at 336-37, 346-47. Instead, petitioner and Nisbet connected
4  an autodialer[1] to the lines. *See* RT at 597-98, 681. They programmed the autodialer to make calls from
5  the lines to toll-free numbers and then hang up immediately without leaving a message. *See* RT at 692-
6  93. For each call, the LD carriers charged a fee to the toll-free subscriber, as mandated by the
7  Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 (1996),[2] and petitioner and Nisbet,
8  as lessees of the lines, collected a $0.24 portion of the fee. *See* RT at 225-26, 246-47. Over a two-year
9  period of operating the autodialer and the lines, petitioner and Nisbet called more than two million toll-
10 free subscribers, receiving a total of $444,198.91, which was paid by the LD carriers out of the fees
11 levied on and paid by the toll-free subscribers. *See* RT at 689; *see also* Br. of United States as Pl.-
12 Appellee in *United States v. David* at 3, 5.

13 As part of the scheme, petitioner and Nisbet used an admittedly fake notary stamp and an
14 admittedly falsified driver's license to rent a mailbox under their fictitious names in Scottsdale, Arizona.
15 *See* RT at 308-28; *see also* 617-37. Petitioner and Nisbet used the mailbox as a repository for the checks
16 from the LD carriers, which were made out to petitioner and Nisbet's fictitious names, and arranged to
17 have the mail forwarded to them in San Francisco by airport courier. RT at 316-20. Under false
18 pretenses, petitioner and Nisbet laundered the majority of the proceeds through an unsuspecting attorney
19 friend (including cashing checks of $110,000, $126,000, $163,000, $22,000 and $20,000). *See* RT at
20 440-45; *see also* RT at 649-50. To aid in masking the nature of their activities, petitioner and Nisbet
21 also created sham corporations in Nevada. *See* RT at 334, 395-405.

22 A jury convicted petitioner of mail fraud, 18 U.S.C. § 1341, using a fictitious name for the
23 purpose of conducting a fraudulent scheme, 18 U.S.C. § 1342, and money laundering, 18 U.S.C. §
24 1956(a)(1)(B). On May 30, the Court sentenced petitioner to 30 months imprisonment and ordered

---

[1] An autodialer consists of software allowing a person to call programmed numbers automatically through a regular telephone line.

[2] The Telecommunications Act of 1996 established a per-call compensation plan to compensate payphone owners and lessees for toll-free calls made from their payphone lines. *See* RT at 284, 618-19; *see also* 47 U.S.C. § 276.

2

petitioner to pay $444,198.91 in restitution, jointly and severally with his co-defendant Nisbet. Petitioner appealed, and on August 9, 2006, the Ninth Circuit affirmed his conviction on several grounds, including that the evidence was sufficient to support petitioner's conviction. *See United States v. David*, 197 Fed. Appx. 564 (9th Cir. Aug. 9, 2006).

## LEGAL STANDARDS

Under federal law, a court may grant relief to a federal prisoner challenging the imposition or length of sentence by petition for writ of habeas corpus on four grounds: (1) the sentence violated the Constitution or the laws of the United States; (2) the sentencing court lacked jurisdiction to impose the sentence; (3) the sentence exceeded the maximum penalty allowed by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. Violations of federal law are only cognizable if they involve a "fundamental defect" causing a "complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974); *see also United States v. Addonzio*, 442 U.S. 178, 184-85 (1979) (holding that a mere error of law in conviction and sentencing does not provide a basis for collateral attack unless it constitutes "a fundamental defect which inherently results in a complete miscarriage of justice").

Under 28 U.S.C. § 2255, if there was a full opportunity for the defendant to be heard during the trial phase or on direct appeal in regard to a claim, then that claim may not be raised in a habeas petition because it is procedurally defaulted. *Winthrow v. Williams*, 507 U.S. 680, 721 (1993); *see Bousley v. United States*, 523 U.S. 614, 621 (1998) (holding that a § 2255 motion may not do service for an appeal); *see also Odom v. United States*, 455 F.2d 159, 160 (9th Cir. 1972) ("The law in this circuit is clear that when a matter has been decided adversely on appeal from a conviction, it cannot be litigated again on a § 2255 motion."). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in [a habeas petition] only if the defendant can first demonstrate either 'cause' and 'actual prejudice,' or that he is 'actually innocent.'" *Bousley*, 523 U.S. at 622 (quoting *Murray v. Carrier*, 477 U.S. 478, 485, 496 (1986)).

**A.  Cause**

3

The "cause" standard requires a petitioner to show that "some objective factor external to the defense" impeded his efforts to construct or raise the claim. *Murray*, 477 U.S. at 488. Such "objective impediments to compliance with a procedural rule" include a showing that the factual or legal basis for a claim was not reasonably available at the time of direct appeal or that "interference by officials," *Brown v. Allen*, 344 U.S. 443, 486 (1953), might have made compliance with the procedural rule impracticable or prevented the claim from being brought earlier, *Murray*, 477 U.S. at 488; *see also United States v. Braswell*, 501 F.3d 1147, 1150 (9th Cir. 2007).

### B.  Actual prejudice

The "actual prejudice" standard requires a petitioner to show "not merely that errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *see also Braswell*, 501 F.3d at 1150.

### C.  Actual innocence or "miscarriage of justice"

Alternatively, in "an extraordinary case," the petitioner may overcome a procedural default with a showing of actual innocence or "miscarriage of justice." *Murray*, 477 U.S. at 485, 495-96; *see also Bousley*, 523 U.S. at 622. A petitioner may claim freestanding innocence irrespective of a constitutional violation, for which the threshold is "extraordinarily high" and the affirmative showing of innocence would have to be "truly persuasive" because the petitioner is claiming entitlement to relief despite a fair trial and a constitutionally valid conviction. *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997) (en banc) (quoting *Herrera v. Collins*, 506 U.S. 390, 417 (1993) (internal quotations marks omitted). A petitioner may also overcome default by claiming "gateway innocence," which requires that a petitioner carry the lesser burden of showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *see also Wildman v. Johnson*, 261 F.3d 832, 842-43 (9th Cir. 1991); *Carriger*, 132 F.3d at 478. A petitioner must show that, in light of new, reliable evidence that was not presented at trial, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at

4

324, 327-28; *see also Carriger*, 132 F.3d at 478.

The scope of an actual innocence claim is narrow. *Calderon v. Thompson*, 523 U.S. 538, 559 (1998); *Schlup*, 513 U.S. at 324. The claim must concern actual or factual innocence, as compared to legal innocence, and requires a showing of reliable evidence sufficient to undermine that which was shown at trial. *Calderon*, 523 U.S. at 559; *Schlup*, 513 U.S. at 324. "Given the rarity of such evidence, 'in virtually every case, the allegation of actual innocence has been summarily rejected.'" *Calderon*, 523 U.S. at 559 (quoting *Schlup*, 513 U.S. at 324).

## DISCUSSION

In his petition for writ of habeas corpus, petitioner challenges the constitutional validity of his conviction on the following grounds under 28 U.S.C. § 2255: (1) the prosecution withheld exculpatory evidence at trial in violation of petitioner's due process rights, *see Brady v. Maryland*, 373 U.S. 83 (1963), by not disclosing that the LD carriers were not *financial* victims of petitioner's conduct, but instead financially benefitted from it; (2) the government's acknowledgment of this fact at the May 6, 2005 sentencing constitutes newly discovered evidence of a lack of actual victims that would have probably changed the outcome of petitioner's trial; and (3) the newly discovered evidence renders the evidence presented at trial insufficient to sustain a conviction.[3] Pet. at 1-3.

Respondent argues and petitioner disputes that petitioner is not entitled to relief because petitioner procedurally defaulted each of the claims raised here either by already raising the same claims on direct appeal and being denied relief, or by having the opportunity to raise them on direct appeal and failing to do so. Likewise, respondent contends and petitioner disputes that petitioner cannot make the requisite showing of cause and actual prejudice, or, alternatively, actual innocence, to overcome his procedural default. In the alternative, respondent argues that petitioner's claims lack merit.

### I.    Procedural default of *Brady* and newly discovered evidence claims

---

[3] As noted above, in its January 9, 2008 order to show cause, the Court summarily dismissed petitioner's fourth ground for relief, namely that the government's acknowledgment at the May 6, 2005 sentencing that the LD carriers were not *financial* victims amounts to a variance between the allegations in petitioner's indictment and the proof presented at trial. Order to Show Cause at 2-4.

Before reaching the merits of the *Brady* and newly discovered evidence claims,[4] the Court must determine whether, as respondent argues, petitioner is procedurally barred from raising them. *See Winthrow*, 507 U.S. at 721. A claim is procedurally defaulted and a petitioner may not raise it in a habeas petition, absent a showing of cause and prejudice, or actual innocence, where he had the opportunity to raise the claim at trial or on direct review and failed to take action. *See Murray*, 477 U.S. at 485-96; *Bousley*, 523 U.S. at 622. Respondent correctly contends and petitioner does not appear to dispute that petitioner procedurally defaulted these claims by failing to raise them on direct appeal. *See* Resp. at 4-5; Traverse at 3-4; *see generally David*, 197 Fed. Appx. 564. The factual basis of these claims is the government's alleged suppression of its knowledge that the LD carriers were not financial victims, but rather financially benefitted from petitioner's conduct, and that petitioner's discovery of this alleged suppression constitutes newly discovered evidence of a lack of actual victims in petitioner's case. However, as discussed below, the record indicates both that the government mentioned at trial and during the May 6, 2005 sentencing that the LD carriers were not financial victims but rather financially benefitted from petitioner's conduct, *see* RT at 167-69, 228, 423-24, 431, 811; Reporter's Transcript of Sentencing Proceedings, May 6, 2005 ("ST") at 17,[5] and that petitioner himself knew of this information at trial, *see* RT 689-691. The parties, likewise, do not appear to contest that, at first blush, the factual basis for petitioner's claims was available on appeal and petitioner mentioned this information in his appellate brief. *See* Resp. at 3-5; Pet. at 12; *see also* Appellant's Opening Br. at 31 (quoting the government's statements at the May 6, 2005 sentencing). As these claims were available to petitioner at the time of direct review and petitioner failed to raise them, the claims are procedurally defaulted and petitioner is barred from raising them here on collateral review, *see Winthrow*, 507 U.S. at 721; *Murray*, 477 U.S. at 485-96, unless petitioner can show cause and actual prejudice, or actual

---

[4] Petitioner's first and second claims of a *Brady* violation and newly discovered evidence are intertwined because petitioner contends that he learned about them through the same series of events and those same events form the factual basis for both claims. *See* Traverse at 3; Resp. at 3-4. Accordingly, the Court will address these claims jointly.

[5] On page 17, Assistant U.S. Attorney Stacey Geis stated, "The phone companies here are not the victims. They were just unjustly enriched. There is some concern of ordering restitution to the phone companies as opposed to the actual victims. The problem is administratively that's not feasible . . . [T]here should be restitution ordered. . . but the question is where should it go."

6

innocence, *see Murray*, 477 U.S. at 485-96.

### A. Petitioner cannot show cause for failure to raise these claims on direct appeal

Petitioner contends and respondent disputes that petitioner had cause for failing to raise the *Brady* and newly discovered evidence claims on direct appeal because the factual basis for the claims was actually not available at the time of direct appeal or, in the alternative, the government interfered with petitioner's ability to bring the claims earlier. *See* Resp. at 5; Traverse at 3-5; *see also* Pet. at 12-24. The unavailability of the factual basis for a claim at the time of direct appeal or interference by officials preventing a claim from being brought earlier may constitute cause for a petitioner's failure to raise a claim on direct appeal. *See Murray*, 477 U.S. at 488; *Braswell*, 501 F.3d at 1150.

First, the Court does not agree that the factual basis for the claims was not available at the time of direct appeal. As noted above, neither party contests that, at a minimum, petitioner learned during his sentencing of the government's awareness that the LD carriers were not financial victims of petitioner's conduct, but instead financially benefitted from it. *See* Resp. at 3-5; Pet. at 12; *see also* ST at 17. Petitioner, however, argues that he did not have the factual basis to raise this claim on appeal because the extent of the government's awareness was not fully confirmed until a November 20, 2006 conversation between petitioner, his attorney John Kirke and FBI Agent Steve Coffin, in which Coffin allegedly stated that the government had long been aware that the LD carriers were not financial victims of petitioner's conduct, but instead financially benefitted from it. Traverse at 3; *see* Pet. at 15 and Pet. Ex. 1, 2. As respondent correctly argues, however, petitioner's own testimony at trial reflects an awareness that it was indeed the toll-free subscribers, not the LD carriers, who were financial victims of petitioner's conduct, because the toll-free subscribers irreversibly parted with money for each toll-free call petitioner's autodialer initiated. RT at 689-691; *see* Resp. at 5. Further, testimony at trial by officials from LD carriers Sprint and AT&T indicated that the LD carriers were not financially victimized by petitioner's conduct, but instead served as intermediaries of sorts, benefitting by way of administrative fees and usage charges. *See* RT at 228, 423-24, 431. For each call petitioner's autodialer made to a toll-free number, the LD carriers collected from the toll-free subscribers the federally mandated $0.24 – which they paid to petitioner on the basis of him being a payphone lessee – in addition

to a $0.02 administrative service fee and other usage charges. *See id.* The prosecution's opening and closing argument similarly portrayed the LD carriers as intermediaries, paying petitioner $0.24 for each call made by his autodialer but ultimately billing the toll-free subscribers for that payment, along with additional administrative and usage fees. *See* RT at 167-69, 811. As this information was available to petitioner even at trial and the government confirmed this information at the May 6, 2005 sentencing, the factual basis for the *Brady* and newly discovered evidence claims was available on direct appeal.

Second, respondent correctly argues that no evidence supports petitioner's contention that government interference prevented petitioner from bringing the claims earlier. Petitioner claims that, although the government had long been aware that the LD companies were not financial victims of petitioner's conduct, the government waited until sentencing to reveal its awareness. For corroborating evidence of the government's interference with the unveiling of this information, petitioner points to Coffin's alleged statement on November 20, 2006, and the fact the government did not make a comparable revelation at petitioner's co-defendant's sentencing five months earlier. Petitioner's arguments are unavailing because, as noted above, information presented by the government at trial clearly indicated that it was the toll-free subscribers, not the LD carriers, who lost money as a result of petitioner's conduct and that the LD carriers served as intermediaries, a role that included the financial benefit of charging administrative and usage fees to the toll-free subscribers for each call made by petitioner's autodialer. *See* RT at 167-69, 228, 423-24, 431, 811. Further, as noted above, petitioner's own testimony reflects his awareness of this information. *See* RT at 689-691. As this information was available and known to petitioner at trial, the government could not be said to have interfered with petitioner bringing these claims earlier.

As the factual basis for petitioner's first and second claims was available on direct appeal and as government interference did not prevent petitioner from bringing these claims earlier, petitioner cannot demonstrate cause excusing his procedural default on these claims. *See Murray*, 477 U.S. at 488; *Braswell*, 501 F.3d at 1150.

### B. Actual prejudice

Even if petitioner could show cause for not raising his *Brady* and newly discovered evidence claims on direct review, respondent correctly contends that petitioner cannot demonstrate actual prejudice flowing from the government's alleged failure to disclose prior to the May 6, 2005 sentencing that the LD companies were not financial victims of petitioner's conduct, but instead financially benefitted from it. In *Frady*, the Supreme Court equated actual prejudice to prejudicing defendant's chances with the jury and required a petitioner to show "not merely. . . the possibility of prejudice," but that the prejudice worked to his "actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170; *see also Braswell*, 501 F.3d at 1150 (holding that the alleged errors must have worked to the petitioner's "actual disadvantage at trial. . . such as by making it difficult to prepare a defense to the charge against him.").

Here, petitioner does not contend actual prejudice *per se*, but his habeas petition argues that the government's failure to disclose the critical information prior to sentencing amounted to a concealment from the jury of the fact that no victims parted with money because of petitioner's conduct. *See* Pet. at 20-21; *see also* Traverse at 4-5. Respondent correctly argues, as noted above, that testimony and the government's own opening and closing statements at trial indicated that the toll-free subscribers, not the LD carriers, were the financial victims of petitioner's conduct. *See* RT at 167-69, 228, 423-24, 431, 811. Though the LD carriers were deceived by petitioner's conduct, the trial demonstrated that they were not financially harmed by it and even charged administrative and usage fees to the toll-free subscribers for each call made by petitioner's autodialer. *See id.* Petitioner's own testimony demonstrated his awareness of these facts. *See* RT at 689-691. As such, the government could not have actually prejudiced petitioner by making it difficult for him to prepare a proper defense, because the information was available at trial and known to petitioner. *See Braswell*, 501 F.3d at 1150. Likewise, the government's actions did not prejudice defendant's chances with the jury or infect the "entire trial with error of constitutional dimensions," because the government already showed at trial that, as a result of petitioner's conduct, the toll-free subscribers, not the LD carriers, parted with money and the LD carriers received administrative and usage fees. *See Frady*, 456 U.S. at 170-74. For those reasons, petitioner cannot demonstrate actual prejudice resulting from his claim of error.

9

### C. Actual innocence

Alternatively, petitioner contends that, on the basis of the *Brady* and newly discovered evidence claims, he is actually innocent and a failure to consider the merits of these claims will result in a fundamental miscarriage of justice because, in light of those claims, no reasonable juror would have found petitioner guilty beyond a reasonable doubt. In an actual innocence claim, a petitioner may make either a "truly persuasive" freestanding claim that meets an "extraordinary high" standard, *Carriger*, 132 F.3d at 476 (quoting *Herrera*, 506 U.S. at 417) (internal quotations marks omitted), or a "gateway" claim that shows that, absent the constitutional violation alleged by petitioner, no reasonable juror would have found petitioner guilty beyond a reasonable doubt, *Schlup*, 513 U.S. at 327-28. Under either standard, the scope of an actual innocence claim is narrow, as a petitioner cannot claim legal innocence, and the burden of the showing is high, as a petitioner must show reliable evidence sufficient to undermine the evidence presented at trial. *See Calderon*, 523 U.S. at 559; *see also Schlup*, 513 U.S. at 324 ("[I]n virtually every case, the allegation of actual innocence has been summarily rejected.").

Petitioner argues actual innocence on the grounds that, as the continued portrayal of the LD carriers as victims was material to petitioner's conviction, evidence that the LD carriers actually benefitted financially from petitioner's conduct, and the government's awareness of this fact, would more likely than not sway a reasonable juror toward a finding of not guilty. *See* Traverse at 4. In the first instance, respondent correctly argues that petitioner does not appear to properly frame a claim of actual innocence, but rather makes a claim of legal innocence. *See* Resp. at 7. Petitioner does not contend that, in light of the *Brady* and newly discovered evidence claims, he did not perform the acts alleged against him at trial. Instead, he argues, akin to his argument on direct appeal, *see* Appellant's Opening Br. at 30-32, that the acts petitioner performed were insufficient under the government's legal theory of convergence because he did not financially defraud the LD carriers, *see id.* In the alternative, the Court agrees with respondent that, under either standard, even if petitioner is properly framing a claim of actual innocence, petitioner cannot make the requisite showing of reliable evidence sufficient to undermine the evidence shown at trial. *See* Resp. at 7-8. As noted above, the evidence that petitioner seeks to introduce already came out at trial. *See* RT at 167-69, 228, 423-24, 431, 689-691, 811. Moreover, petitioner's showing is insufficient to undermine the evidence at trial that established mail

10

1  fraud under 18 U.S.C. § 1341 by showing that (1) petitioner participated in a scheme with the intent to
2  defraud and (2) the scheme used or caused the use of mails in furtherance of the scheme. *See United*
3  *States v. Johnson*, 297 F.3d 845, 870 (9th. Cir. 2002). As noted above, the evidence at trial indicated
4  that the LD carriers did not suffer financial loss, but actually benefitted financially (through
5  administrative fees and usage charges) from petitioner's actions. *See* RT at 167-69, 228, 423-24, 431,
6  689-691, 811. Even if, as petitioner alleges, the government failed to disclose these facts until the May
7  6, 2005 sentencing, respondent correctly argues that the totality of the evidence presented at trial still
8  shows that petitioner committed mail fraud by participating in a scheme with the intent to defraud and
9  that the scheme in which petitioner participated used or caused the use of mails in furtherance of the
10 scheme. *See id.*; *see also* Resp. at 7-8; Traverse at 4-5. Even under the lesser standard of a gateway
11 innocence claim, petitioner cannot meet the burden of showing that, in light of his *Brady* and newly
12 discovered evidence claims, no reasonable juror would have found petitioner guilty beyond a reasonable
13 doubt. *See Schlup*, 513 U.S. at 327-28. Accordingly, petitioner cannot overcome the procedural default
14 of these claims with a showing of actual innocence. *See Murray*, 477 U.S. at 485, 495-96; *Bousley*, 523
15 U.S. at 622.

16 Petitioner is barred from raising the *Brady* and newly discovered evidence claims on collateral
17 review, because petitioner could have raised these claims on direct appeal and is unable show cause and
18 actual prejudice or actual innocence. The Court DENIES his petition for habeas corpus insofar as it is
19 based on these claims.

20

21 **II.     The merits of petitioner's *Brady* and newly discovered evidence claims**

22 In the alternative, even assuming that petitioner's *Brady* and newly discovered evidence claims
23 are not procedurally defaulted, the Court finds that these claims must be denied on their merits.
24 Petitioner claims that the government violated petitioner's right to due process under *Brady* by
25 withholding until the May 6, 2005 sentencing its knowledge that the LD carriers were not financial
26 victims of petitioner's conduct. Petitioner further contends that, as the LD carriers did not part with
27 money as a result of petitioner's conduct, "no actual victim parted with money" and, if the jury had
28 known this fact, it would not have convicted petitioner. *See* Pet. 20-21; Resp. at 4. Under *Brady*, the

11

prosecution violates a defendant's due process rights if it fails to turn over evidence that is "material either to guilt or to punishment." *Raly v. Ylst*, 470 F.3d 792, 804 (9th Cir. 2006) (quoting *Brady*, 373 U.S. at 87) (internal quotations marks omitted). "To prevail on a *Brady* claim, a defendant must demonstrate that: (1) the evidence at issue is favorable, either because it is exculpatory or because it is impeaching; (2) such evidence was suppressed by the State, either willfully or inadvertently; and (3) prejudice resulted." *Id.* at 804. However, if "the defendant is aware of the essential facts enabling him to take advantage of any exculpatory evidence, the Government does not commit a *Brady* violation by not bringing the evidence to the attention of the defense." *Id.* (quoting *United States v. Brown*, 582 F.2d 197, 200 (2d Cir. 1978)) (internal quotation marks omitted); *see also United States v. Dupuy*, 760 F.2d 1492, 1501 n. 5 (9th Cir. 1985) (citing *Brown*, 582 F.2d 197).

Here, as discussed above, petitioner's own testimony at trial reflects an awareness of the essential facts that petitioner argues the government withheld. *See* RT at 689-691. Under *Raly*, petitioner's awareness of these "essential facts" means that petitioner's *Brady* claim lacks merit. *See Raly*, 470 F.3d at 804. Likewise, testimony at trial and the government's opening and closing statements clearly indicated that, for each call made by petitioner's autodialer, the LD carriers charged the toll-free subscribers administrative fees and usage charges. *See* RT at 167-69, 228, 423-24, 431, 811. As these facts came out in the government's case at trial, petitioner's contention that FBI Agent Coffin's statement that the government knew prior to the May 6, 2005 sentencing that the LD carriers financially benefitted from petitioner's calling activity does not constitute evidence that the government withheld information from petitioner. Respondent correctly argues that rather than presenting any new information previously withheld, the government's statements merely informed the Court of the distinction that, though the LD carriers were deceived by petitioner's conduct, they were not financially harmed and, thus, not entitled to receive restitution from petitioner. *See* ST at 17-18. In contrast to petitioner's claim that "no actual victim parted with money," the parties acknowledged at the sentencing hearing that, although the individual toll-free subscribers were financially harmed by petitioner's conduct and restitution would be proper, it would be administratively impossible to provide restitution to the hundreds of toll-free subscribers. Resp. at 4; *see also* ST at 17-18. Petitioner's *Brady* claim is, therefore, without merit.

12

Petitioner also claims that the government's statements at the May 6, 2005 sentencing constitute newly discovered evidence of a lack of actual victims defrauded by petitioner, evidence that would have produced an acquittal had the jury been advised of it. Newly discovered evidence is a ground for habeas relief "when it bears on the constitutionality of an appellant's conviction and would probably produce an acquittal." *Spivey v. Rocha*, 194 F.3d 971, 979 (9th Cir. 1999). As discussed above, respondent correctly contends that the government's statements at the sentencing did not constitute newly discovered evidence of a lack of an actual victim. This information would not "probably produce an acquittal," *Id.* at 979, because, as discussed above, the government's case and petitioner's own testimony at trial already introduced this same information to the jury. *See* RT at 167-69, 228, 423-24, 431, 689-91, 811. Further, as discussed above, petitioner does not contend he did not perform the acts alleged against him at trial. Petitioner's newly discovered evidence claim is, therefore, without merit.

### III.    Procedural default of petitioner's sufficiency of the evidence claim

Respondent contends and petitioner that disputes petitioner is barred from claiming that insufficient evidence was presented to sustain a conviction because petitioner already raised this issue unsuccessfully on direct appeal. When a matter has been decided adversely on direct review, it cannot be litigated again on a § 2255 petition. *Odom*, 455 F.2d at 160; *see also United States v. Currie*, 589 F.2d 993, 995 (9th Cir. 1979) ("Issues disposed of on previous direct appeal are not reviewable in a subsequent § 2255 proceeding."). However, circumstances resulting in a miscarriage of justice may warrant review of a previously litigated claim. *See Davis*, 417 U.S. at 345; *see also United States v. Scrivner*, 189 F.3d 825, 827 (9th Cir. 1999) (holding that the district court is barred from reconsidering claims decided by an appellate court in the same case unless (1) the first decision was clearly erroneous, (2) an intervening change in the law has occurred, (3) the evidence presented is substantially different, (4) other circumstances have changed or (5) a manifest injustice would result).

Petitioner argues that the jury was required to find that the LD carriers were both deceived and injured by petitioner's deception, and, as the LD carriers were not financial victims of petitioner's conduct, there was insufficient evidence of this convergence, rendering the evidence presented at trial insufficient to sustain his conviction. Respondent correctly contends and petitioner concedes that the

13

Ninth Circuit already considered and rejected this same argument, namely petitioner's contention that there was not a proper convergence between the party that was deceived and the party that suffered financial loss as a result of petitioner's conduct. Resp. at 8-10; Traverse at 10; *see David*, 197 Fed. Appx. at *1. Respondent correctly argues and petitioner appears to concede that petitioner's insufficient evidence claim here is merely a rewording of the unsuccessful ground of relief put forth by petitioner on direct review. *See* Resp. at 9; Traverse at 10. However, petitioner argues that, in light of the newly discovered evidence, the fact that petitioner raised the insufficient evidence claim on direct review actually bolsters the same claim on collateral review. *See* Traverse at 10. As noted above, and as respondent correctly contends, that which petitioner argues is new information was in fact available to him at trial and on direct review. *See* RT at 167-69, 228, 423-24, 431, 689-691, 811. It does not constitute newly discovered evidence and, as such, it does not bolster the same claim that petitioner raised on direct review here on collateral review. Further, as discussed above, no circumstances exist here and petitioner does not appear to argue a specific basis for meeting the "miscarriage of justice" exception and warranting collateral review of the Ninth Circuit's prior resolution of petitioner's claim. *See Davis*, 417 U.S. at 345. As petitioner already unsuccessfully argued his insufficient evidence claim on direct review, petitioner is barred from re-litigating the same claim here. *See Odom*, 455 F.2d at 160. The Court therefore DENIES the habeas petition on the sufficiency of the evidence claim.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court DENIES Daniel David's petition for writ of habeas corpus. [Docket No. 1]

**IT IS SO ORDERED.**

Dated: July 9, 2008

SUSAN ILLSTON
United States District Judge

14